C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
  EMANIA SHEPARD,                         :

                                             :       **MEMORANDUM DECISION**
                           Petitioner,      :       **AND ORDER**

                - against -              :       17-cv-1235 (BMC)

  SUPERINTENDENT KIRPATRICK,     :

                        Respondent.     :
----------------------------------------------------------- X

**COGAN**, District Judge.

      Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court conviction after a jury trial on numerous burglary and larceny counts, for which he received an aggregate sentence of 13 years' custody. Additional facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, petitioner engaged in a spree of theft crimes over a three month period in 2011–2012, during which he stole property from stores, commercial buildings, an apartment, and cars. Upon his arrest, he was in possession of several stolen items from places he had robbed that day as well as keys to a car that he had lifted from a nearby business. He admitted to several of the thefts; surveillance videos showed him inside some of the locations where the thefts had occurred; and eyewitnesses identified him as to some of the thefts.

      Petitioner raises four points of error: (1) the hearing court improperly denied his pretrial motion to suppress evidence; (2) the hearing court improperly ruled under People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974), that petitioner, if he chose to testify at trial (which he did not), could be impeached with prior convictions; (3) the evidence against him was

insufficient; and (4) the trial court erred in charging the jury on the elements of burglary in the second degree, and failed to give an adverse-inference missing evidence charge. His claims are either not cognizable on habeas corpus review or they do not meet the standard for relief under 28 U.S.C. § 2254(d). The petition is therefore denied.

I.      **Rulings from pretrial suppression hearing**

Petitioner challenged on direct appeal and renews his challenge here as to several pretrial rulings allowing the introduction of evidence against him. None of these claims is substantial.

*A. Probable cause to arrest and search incident to arrest*

Petitioner first argues that there was insufficient probable cause to arrest him for the particular robbery for which he was arrested, and that once he was arrested, there was insufficient probable cause to question him about some of the other robberies to which he admitted. The record at the suppression hearing showed that a police officer, answering a radio run advising that a disturbance had occurred, arrived at the scene to see someone standing over petitioner, and an elderly witness approached the officer and told him that petitioner had just robbed him. Another witness, who worked for the elderly witness, told the officer that he had recovered the elderly witness's cell phone from petitioner after chasing petitioner down. The officer arrested petitioner, and in the search incident to arrest, found him in possession of pieces of merchandise from a local store that still had the sales tags on them, as well as car keys from a car that he admitted did not belong to him.

The suppression court made findings of fact and conclusions of law at the conclusion of the suppression hearing, finding that the police officer had probable cause to arrest petitioner. The Appellate Division affirmed. People v. Shepard, 138 A.D.3d 895, 897, 29 N.Y.S.3d 485, 487 (2d Dep't), leave to app. denied, 28 N.Y.3d 936, 40 N.Y.S.3d 364 (2016).

This issue of probable cause is not cognizable on habeas corpus review. In <u>Stone v. Powell</u>, 428 U.S. 465 (1976), the Supreme Court held that federal habeas corpus review is unavailable for Fourth Amendment claims where the petitioner has had the opportunity to fully litigate the claim in state court: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Id.</u> at 494. The Supreme Court reasoned that, in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." <u>Id.</u> at 494-95.

Based on <u>Stone</u>, the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations," or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." <u>Gates v. Henderson</u>, 568 F.2d 830, 840 (2d Cir. 1977) (en banc). Courts have repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims. See, e.g., <u>Capellan v. Riley</u>, 975 F.2d 67, 70 n.1 (2d Cir. 1992); <u>Guzman v. Greene</u>, 425 F. Supp. 2d 298, 318 (E.D.N.Y. 2006); <u>Crispino v. Allard</u>, 378 F. Supp. 2d 393, 413 (S.D.N.Y. 2005). For this reason, courts within this Circuit have almost uniformly held that challenges to a state court's rulings denying to apply the exclusionary rule are not reviewable under <u>Stone</u>. See, e.g., <u>Marino v. Superintendent, Franklin Corr. Facility</u>, No. 17-cv-1650, 2019 WL 1232088, at *4-5 (E.D.N.Y. March 15, 2019); <u>Coleman v. Racette</u>, No. 15 Civ. 4904, 2019 WL 948401, at *9-10 (S.D.N.Y. Feb. 27, 2019); <u>Doll v. Chappius</u>, No. 15-cv-6400,

2018 WL 6310191, at *9-10 (W.D.N.Y. Dec. 3, 2018); Wilson v. Graham, No. 17-cv-0863, 2018 WL 6001018, at *5-6 (N.D.N.Y. Nov. 15, 2018); Holley v. Cournoyer, No. 17-cv-587, 2018 WL 3862695, at *4-5 (D. Conn. Aug. 14, 2018); Ala v. Vermont, No. 10-cv-221, 2011 WL 1843045, at *4 (D. Vt. Apr. 4, 2011).

Here, there is no question of the adequacy of the state law remedy. Petitioner raised this same issue in an evidentiary hearing and on direct appeal. Under these circumstances, the state courts have provided petitioner a full and fair opportunity to raise his Fourth Amendment claim, and he has no right to federal habeas corpus review.

B. *The photo identification*

Once petitioner was taken into custody, the police questioned him about other open theft cases in the area. Petitioner confessed to a number of other thefts.

One of them was a burglary from a health club. The incident occurred when petitioner went into the health club, pretending to be interested in a membership. He took an employee's laptop while waiting to be interviewed. When the employee realized the laptop had been stolen, he reviewed video feed from the area in the club where he kept his laptop and saw petitioner stealing the laptop. The employee downloaded a still frame from the video and showed it to a security guard at a motel next door to the health club. The security guard recognized the individual as petitioner, who resided at the motel, and identified him by name. The security guard approached petitioner in the motel and confronted him about taking a laptop from the health club; petitioner admitted it, accepting the security guard's (false) promise that if petitioner gave back the computer, he would not be prosecuted. On being shown a photo array by the police thereafter, the security guard picked out petitioner, and he again identified petitioner at trial.

In the suppression hearing and then on direct appeal, petitioner contended that the security guard's photo array identification and the in-court identification confirming it, respectively, should have been suppressed because they were "tainted" by the security guard having already seen the still. He also contended that the identification from the photo array was not reliable because petitioner was physically distinct from the other pictures in the photo array.

The hearing court again made detailed findings and conclusions in denying the motion to suppress. It held that the photo array properly included subjects who resembled petitioner and was not unduly suggestive. It further held that there was no taint from the security guard having been shown the still video frame, as the security guard already knew petitioner as a long-term guest at the motel. The Appellate Division affirmed the ruling on the merits. Shepard, 138 A.D.3d at 896, 29 N.Y.S.3d at 486.

Because the Appellate Division decided this issue on the merits, my review attracts the provisions of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"). AEDPA permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature," or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

5

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (internal quotation marks and citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has repeatedly admonished lower courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 577 U.S. 73, 76-77 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013))).

Even outside the AEDPA context, a defendant bears a high burden of proving that an identification should be suppressed. The question for the court is whether such procedures were "unnecessarily suggestive" and whether there is a "very substantial likelihood of irreparable misidentification." United States v. Maldonado–Rivera, 922 F.2d 934, 973 (2d Cir. 1990) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)). If the court finds that the initial procedure was unduly suggestive, it must then determine whether the identification testimony is "independently reliable," and therefore admissible. Id. Only in extraordinary cases should identification evidence be withheld from a jury. See United States v. Jones, 689 F.3d 12, 18 (1st Cir. 2012). An element of untrustworthiness goes to the identification's weight, not to its admissibility. Manson v. Brathwaite, 432 U.S. 98, 116 (1977); see also Neil v. Biggers, 409 U.S.

188, 199 (1972); Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001).  Thus, to be admissible, a court may find either that the identification procedures were not unduly suggestive or that the identification was independently reliable despite any unnecessarily suggestive procedure.  See Raheem, 257 F.3d at 133.

Seen through the gloss of AEDPA, a claim that the physical arrangement of a lineup was unduly suggestive on federal habeas corpus review is even more difficult because a state court's determination that it was not is treated as a finding of fact.  And "a determination of a factual issue made by a State court shall be presumed to be correct" subject to rebuttal by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  Moreover, "there is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be."  United States v. Reid, 517 F.2d 953, 965 n. 15 (2d Cir. 1975); accord Espiritu v. Haponik, No. 05 Civ. 7057, 2012 WL 161809, at *6 (S.D.N.Y. Jan. 19, 2012) ("[F]actual findings of the state court regarding the suggestiveness of the lineup must be presumed correct in the absence of clear and convincing evidence to the contrary.").

Here, the hearing court made a specific finding that "the photo-pack … comport[ed] with the defendant's constitutional safeguards with regard to his composition, lighting, likenesses, facial hairs, features, et cetera, and it is not unduly suggestive on its face."  Petitioner gave the Appellate Division no reason to question this finding, and I have even less of one when viewed through the narrowing prism of AEDPA.  Indeed, having reviewed the photo array, I consider the argument that it was suggestive to be extremely insubstantial.  In addition, the photo array was immaterial to the security guard's identification of petitioner in court.  He already knew petitioner.  All the photo array did was confirm how petitioner came to his attention.

The Appellate Division's decision upholding the use of the photo array and the in-court identification was neither contrary to, nor an unreasonable application of, Supreme Court authority.

C. *Voluntariness of statements to the police*

After his arrest, as described above, a detective read petitioner his <u>Miranda</u> rights and asked about a number of other open theft cases in the area. Petitioner waived his rights and admitted in detail to a number of thefts he had undertaken in the area, blaming it on a "crack problem." The detective prepared four separate statements, one for each of the thefts to which petitioner admitted, and petitioner signed the statements, each of which reiterated the <u>Miranda</u> warnings and waiver.

Later that day, another detective interviewed petitioner. Petitioner then admitted to details of a number of other thefts and signed statements to that effect. Both detectives testified that petitioner was cooperative and remorseful; that they did not have their firearms when they interviewed petitioner; that petitioner never asked for the questioning to stop and never requested a lawyer; and that they made no promises or threats. Each of the statements that petitioner signed had <u>Miranda</u> warnings and waivers in them. Petitioner had been arrested about 3:00 p.m.; his statements were made starting at about 9 p.m. that evening and continued into the next morning until 2:30 a.m.

The hearing court rejected petitioner's claim that his statements should have been suppressed as involuntary. It found that petitioner had knowingly, intelligently, and voluntarily waived his Fifth and Sixth Amendment rights, and that the detectives had not used or threatened force or coerced petitioner into making the statements. It further found that there was no need to re-Mirandize petitioner between the first and second interview because there was no indication

8

that a significant period of time had elapsed or that petitioner had forgotten his advice. The Appellate Division affirmed on the merits. Shepard, 138 A.D.3d at 896, 29 N.Y.S.3d at 486.

Once again, because the Appellate Division decided this issue on the merits, its decision is subject to the limited scope of review under AEDPA. Although the voluntariness of a confession involves a mixed question of fact and law, the factual findings which underlie a determination of voluntariness are entitled to a presumption of correctness under AEDPA. Boyette v. Lefevre, 246 F.3d 76, 88 (2d Cir. 2001). Thus, petitioner must show that the state court's conclusion was not only erroneous, but contrary to or an unreasonable application of Supreme Court authority. 28 U.S.C. § 2254(d). "[S]o long as the issue has been raised and decided in state court on the merits, it appears that, even with respect to mixed questions of law and fact, the federal court may overturn the decision of the state court only if the decision was objectively unreasonable." Grate v. Stinson, 224 F. Supp. 2d 496, 502 (E.D.N.Y. 2002) (applying AEDPA deferential standard to review of voluntariness determination).

This burden is further increased in many cases challenging the voluntariness of a confession because the Supreme Court authority on the issue stands only for the broad proposition that a confession must be voluntary to be admissible. Because AEDPA authorizes a federal court to grant relief only when a state court's application of federal law was unreasonable, it follows that "[t]he more general the rule" at issue – and thus the greater the potential for reasoned disagreement among fair-minded judges – "the more leeway [state] courts have in reaching outcomes in case-by-case determinations." Yarborough, 541 U.S. at 664.

Determining whether a confession was voluntary necessarily means delving into the circumstances behind the confession on a case-by-case basis. "No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is

9

determined only after careful evaluation of the totality of the surrounding circumstances." Green v. Scully, 850 F.2d 894, 901 (2d Cir. 1988) (citing, *inter alia*, Fare v. Michael C., 442 U.S. 707, 726 (1979)). This framework further decreases the likelihood that the state court's decision will be found contrary to or to be an unreasonable application of Supreme Court authority.

Here, the underlying facts of the interrogation were not in dispute. Petitioner signed the waiver and never sought to reinvoke his rights. The only issues he raised going to voluntariness were the length of the period of questioning and that the interrogation was carried out by multiple detectives (what he called a "tag team" approach). These facts are not so oppressive that the state courts clearly erred in determining that his confessions were voluntary. There is nothing in the Appellate Division's holding that is contrary to or an unreasonable application of any Supreme Court authority.

## II. Sandoval claim

The trial court ruled before trial that if petitioner chose to testify, the prosecution could impeach him with specified prior convictions for larceny, robbery, burglary, and attempted assault, although it would preclude examination of the underlying facts of those convictions. It also precluded examination of a conviction for possession of contraband while in prison. Petitioner chose not to testify at trial, and challenged the trial court's ruling on appeal as an abuse of discretion and deprivation of due process. The Appellate Division affirmed the trial court's ruling on the merits. Shepard, 138 A.D.3d at 896, 29 N.Y.S.3d at 486-87.

There are two reasons why this claim cannot be heard on federal habeas corpus review. First, in his motion for leave to appeal to the New York Court of Appeals, petitioner abandoned this issue. By doing so, he failed to exhaust it. See Woodford v. Ngo, 548 U.S. 81, 92-93 (2006). And because New York law provides no avenue for him to reassert it in state court at

this time, the issue is deemed exhausted and procedurally barred. See Acosta v. Artuz, 575 F.3d 177, 188 (2d Cir. 2009); DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (citing Harris v. Reed, 489 U.S. 255, 263 n.9 (1989)); McKethan v. Mantello, 292 F.3d 119, 122-23 (2d Cir. 2002) (claims deemed exhausted where they were "procedurally barred for not having been raised in a timely fashion"). Thus, the Court examines the procedurally defaulted issue for cause and prejudice, and to determine if a miscarriage of justice will result if the court fails to hear the claim. See St. Helen v. Senkowski, 374 F.3d 181, 184 (2d Cir. 2004); DiGuglielmo, 366 F.3d at 135; McKethan, 292 F.3d at 122-23; Ramirez v. Att'y Gen., 280 F.3d 87, 94 (2d Cir. 2001); Reyes v. Keane, 118 F.3d 136, 139-40 (2d Cir. 1997). Petitioner has offered neither cause and prejudice to excuse the procedural default, nor suggested that the failure to have the issue determined would bring about a miscarriage of justice, and therefore cannot overcome the procedural default. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Harris, 489 U.S. at 262.

Second, because petitioner chose not to testify at trial, his claim does not raise a cognizable issue on federal habeas corpus review. In Luce v. United States, 469 U.S. 38, 43 (1984), the Supreme Court held that "a defendant must testify" to "raise and preserve for review the claim of improper impeachment with a prior conviction." A reviewing court "cannot assume that the adverse ruling motivated a defendant's decision not to testify," the Court explained, for "an accused's decision whether to testify seldom turns on the resolution of one factor." Id. at 42 (citation and internal quotation marks omitted). Accordingly, when a defendant does not testify, any harm flowing from the pretrial ruling is "wholly speculative," and harmless error review becomes impossible. Id. at 41.

Although Luce involved direct review of a federal district court's interpretation of the federal rules of evidence, courts have extended Luce's holding to other contexts, including habeas review. See Mercado v. Phillips, No. 04 Civ. 2204, 2011 WL 1157617, at *6 (S.D.N.Y. Feb. 22, 2011) (collecting cases), report and recommendation adopted, 2011 WL 1157570 (S.D.N.Y. March 29, 2011). Indeed, district courts in the Second Circuit have followed "a bright-line rule . . . barring habeas relief for allegedly erroneous Sandoval rulings in instances where a defendant elects not [to] testify." Shannon v. Senkowski, No. 00 Civ. 2865, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000).

I thus conclude that, because petitioner did not testify, Luce bars habeas review of the Sandoval ruling allowing the prosecution to cross-examine petitioner about his prior convictions had he chosen to testify at trial.

### III.   Sufficiency of the Evidence

The Appellate Division went through each of the counts of petitioner's convictions and found the evidence legally sufficient to sustain them. Shepard, 138 A.D.3d at 896-97, 29 N.Y.S.3d at 487. Its decision on the merits again requires me to apply the deferential standard of review under AEDPA. This makes petitioner's task particularly difficult, for the test in determining the constitutional sufficiency of evidence to support a conviction is itself restrictive. The standard for reviewing claims of legal insufficiency is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Thus, even when "faced with a record of historical facts that supports conflicting inferences, [the habeas court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must

defer to that resolution." Id. at 326. Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (internal quotation marks omitted).

Measured against this standard, petitioner's claim is not even colorable. He confessed to each of the robberies. But that's not all. He was arrested in possession of stolen property from three of the crime scenes. Witnesses placed him at the crime scenes on the day of the robberies. As noted above, a still photo from one of the crime scenes identified him further, and petitioner admitted to the security guard that he had stolen a computer.[1]

The Appellate Division's decision was thus neither contrary to nor an unreasonable application of Jackson or its Supreme Court progeny.

## CONCLUSION

The petition is denied and the case is dismissed. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and, therefore, *in forma pauperis* status

---

[1] To the extent petitioner is arguing that his verdict was against the weight of the evidence, that is a state law claim not cognizable on federal habeas corpus review. See e.g., Mobley v. Kirkpatrick, 778 F. Supp. 2d 291, 311 (W.D.N.Y. 2011) ("Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding." (citing, *inter alia*, Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) ("a writ of habeas corpus cannot be used to review the weight of evidence")); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) ("A weight of the evidence argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles . . . . Accordingly, the Court is precluded from considering the claim." (internal quotation marks and citations omitted)).

13

is denied for the purposes of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
       July 21, 2021

14